```
         IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF ARKANSAS
                 FAYETTEVILLE DIVISION
```

GARY BOWMAN                                              PLAINTIFF

        v.               Civil No. 03-5225

DR. JOHN A. WHITE, in his official
capacity as Chancellor of the University
of Arkansas; DR. DONALD O. PEDERSON,
in his official capacity as Vice Chancellor
for Finance Administration for the
University of Arkansas; and LARRY L.
SLAMMONS, in his official capacity as
Director of University of Arkansas Police
Department                                              DEFENDANTS

## O R D E R

Now on this 2nd day of August, 2006, comes on for consideration **Plaintiff's Motion For Attorney Fees And Non-Taxable Expenses** (document #42), and from said motion, the supporting documentation, and the response thereto, the Court finds and orders as follows:

1. Plaintiff Gary Bowman ("Bowman") brought suit pursuant to **42 U.S.C. §1983** and **§1988**, challenging the constitutionality of a policy of the University of Arkansas at Fayetteville, identified as Fayetteville Policies and Procedures 708.0, "Use of University Facilities and Outdoor Space" (the "Policy"). The Policy restricted the use of University space and facilities by non-University entities. This Court found that the campus was a nonpublic forum, analyzed the Policy from that perspective and found it constitutional, and dismissed Bowman's Complaint.

Bowman appealed to the Eighth Circuit Court of Appeals, where this Court's ruling was affirmed in part and reversed in part. **Bowman v. White**, **444 F.3d 967 (8th Cir. 2006).** Bowman now seeks an award of

attorney's fees and nontaxable costs pursuant to **§1988.**

2. Bowman's request for attorney's fees is authorized by **42 U.S.C. §1988,** which provides that the Court has discretion to award a reasonable attorney's fee to the prevailing party in a suit brought pursuant to **§1983.** The partial reversal of this Court's Order dismissing Bowman's case makes him, for fee-shifting purposes, a prevailing party. **Hensley v. Eckerhart**, **461 U.S. 424, 433 (1983)**(plaintiff may be considered a prevailing party if he succeeds on any significant issue which achieves some of the benefits sought in bringing suit).

3. Attorney's fees awarded under fee-shifting statutes are generally calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. **City of Burlington v. Dague**, **505 U.S. 557 (1992).** The resulting figure is the "lodestar," and there is a strong presumption that the lodestar represents a reasonable attorney's fee. **Blum v. Stenson**, **465 U.S. 886 (1984).** Bowman submits that his attorney, Nathan Wesley Kellum ("Kellum"), worked a total of 259.70 hours[1] and should be compensated at a rate of $290.00 per hour, for an attorney's fee of $75,313.00.

4. Defendants object to the fee award sought by Bowman, contending that both the number of hours and the hourly rate are unreasonably high. Indeed, defendants contend that the fee petition is so "intolerably inflated" that it is subject to outright denial.

---

[1]This represents only hours worked at the district court level, and has been adjusted to delete 6.9 hours Kellum considered "duplicative, excessive or unnecessary."

-2-

The Court rejects the notion that the fee petition should be absolutely denied and will, instead, turn to an examination of the reasonableness of the hours and the hourly rate claimed.

5. Defendants object to the number of hours claimed for the following reasons:

(a) Bowman should not be compensated for work done on claims he did not prevail on;

(b) the Eighth Circuit denied Bowman's fee petition for appellate work;

(c) Bowman should not be compensated for what they characterize as an "insignificant" or "*de minimis*" victory; and

(d) the number of hours devoted to certain tasks is excessive.

The Court will examine each of these objections in turn.

6. Bowman asserted five challenges with respect to the ways in which the Policy allegedly restricted his expressive activities:

* the permit requirement;

* the five-day cap;

* the three-day advance notice requirement;

* the cancellation policy[2]; and

* the "dead day" ban.

In First Amendment jurisprudence, the type of forum is critical to determining the level of restraint that may be placed on expressive activities. Therefore, the "forum analysis" issue was the underpinning of each of the five "Policy issues." While Bowman only

---

[2]The cancellation policy was not challenged on appeal.

prevailed on one of the "Policy issues," he prevailed on the issue of forum analysis - based on successfully persuading the appellate court that, contrary to this Court's holding, the campus areas he sought to use were designated public fora, rather than nonpublic fora.

As noted by the opinion in **Bowman**, the distinctions between different types of fora were far from clear under Eighth Circuit precedent. A substantial part of Bowman's efforts were devoted to this underlying issue, upon which the subsequent disposition of the five Policy issues was predicated. Thus, while the Court agrees that Bowman's claimed hours should be reduced somewhat, to account for his less-than-complete success, it believes that only a small reduction is called for.

In **Wal-Mart Stores, Inc. v. Barton**, **223 F.3d 770 (8th Cir. 2000)**, a twenty percent reduction was found appropriate where plaintiff prevailed on the claim that was "at the heart of her case," while failing on five related claims. The Court finds that case analogous to the one at bar.

Accordingly, the Court will reduce the number of hours upon which the fee is based by twenty percent to account for the fact that, although he prevailed on the core claim as to the type of forum involved, he did not succeed on the other four of the five "Policy issues" he raised.

7. The Court does not take into account, in connection with its determination of a proper attorney's fee, the denial of Bowman's fee petition by the Eighth Circuit for work done on appeal. That

court gave no explanation for its denial and nothing more than mere speculation concerning it could "justify" this Court in reducing or denying the fee petition now pending before it on that basis.

8. The Court does not agree with defendants' contention that the result obtained by Bowman is *de minimis,* or of limited significance - or that it is actually more beneficial to educational institutions than to those who would challenge limitations on the right to speak at such institutions. As noted in the opinion in **Bowman**, at the time the case came before the Eighth Circuit Court of Appeals, this Circuit's analysis of what constitutes a "designated public forum" was "far from lucid." The opinion in **Bowman** explicates this concept in great detail and offers all citizens - including those who would speak and those who would restrain them - useful guidance for future decisions concerning the use of public space for speech activities. Such a result cannot, in the Court's view, be properly characterized as an insignificant or *de minimis* victory.

9. Several categories of hours devoted to specific tasks are challenged as being excessive. The Court has concerns only about three of those areas and will not devote any time to those with which it has no concerns.

(a) The first category of concern is the claim of 23[3] hours for

---

[3] The Court's calculations as to the number of hours in each of these categories do not exactly match that of defendants, but assigning items to particular categories on an attorney's time sheet is not an exact science, and because - with one exception - Bowman has not objected to defendants' calculations, the Court has accepted them as correct. The one exception is the contention that 19.8 hours is claimed for preparing the fee petition. Kellum explains that only 1.5 hours of that time was assigned to preparation of the fee petition at the district court level, the other hours being assigned to the appellate court level, and the Court accepts this explanation.

drafting the Complaint. While it is, of course, difficult to judge how much time a project like this should require, the 17-page Complaint contains far more detail than is necessary under federal notice-pleading requirements, and the Court believes it could well have been prepared in the course of one day, particularly given that Bowman and Kellum had been in frequent contact for almost two years before the Complaint was filed; that Kellum had conducted some 35 hours in research and the drafting of memoranda on the relevant issues; and that he had spent over 7 hours reviewing documents. Fifteen hours will, therefore, be deducted from the total number of hours claimed.

(b) Defendants contend that Bowman claims 62.7 hours for research and drafting a motion and brief for preliminary injunction.

Given the qualifications Kellum claims (13 years of "extensive" practice in the area of First Amendment law, with "expertise on religious speech on public ways") the Court finds it unlikely that he required a week and a half to produce these documents, and will, therefore, deduct 20 hours from the total hours claimed.

(c) Bowman claims 42.7 hours to prepare for trial and defendants challenge the amount.

The Court is inclined to agree with defendants' challenge. Considering that the issues had already been fully outlined, researched and briefed in connection with his motion for preliminary injunction; that exhaustive efforts had been made to develop a stipulation of facts; that proposed findings of fact and conclusions

<em>-6-</em>

of law had been prepared; that there were few witnesses; and that the trial lasted only one day, the Court believes this preparation could have been accomplished in half the time claimed, and will deduct 21 hours from the total claimed.

(d) The foregoing deductions total 56 hours, which will be subtracted from the total claimed (259.70), and the remaining 203.70 hours will be reduced by 20% to account for less-than-total success. The fee award will, therefore, be computed on the basis of 162.96 hours of attorney time.

10. Defendants also challenge the hourly rate of $290 claimed by Bowman for Kellum, contending that it is too high for the type of work Kellum performed in the community where the case was litigated - Fayetteville, Arkansas.

What constitutes a reasonable hourly rate is "the ordinary rate for similar work in the community where the case has been litigated." **Moysis v. DTG Datanet, 278 F.3d 819, 828 (8th Cir. 2002)**. The party requesting the fee award bears the burden of substantiating the requested rate as well as the hours expended. **Hensley v. Eckerhart, 461 U.S. 424 (1983)**.

To substantiate his claim that $290/hour is a reasonable rate, Bowman submitted the Declaration of Nathan Kellum, who avers that his rate is "well in line with my level of experience in this area of the law, and perhaps even low for someone with my experience and degree of success." Kellum also avers that his hourly rate was $225 in 2004, $250 in 2005, and $290 in 2006, and that these rates "have been

-7-

changed to reflect my experience and expertise."

Bowman offers two additional affidavits in support of Kellum's rate. The Affidavit of Scott Ellington of Paragould avers that he "understand[s]" that rates for civil rights litigation in Fayetteville can range from $150 to $325 per hour. The Affidavit of Kelly Shackelford, who apparently is from Collin County, Texas[4], avers that Kellum's rate is "imminently reasonable, if not too low," and that his own rate is $450/hour.

Countering Bowman's affidavits, defendants submitted the Affidavit of Doug Norwood, a Rogers, Arkansas, attorney who handles civil rights cases. Norwood avers that the prevailing rate for an experienced civil rights litigation attorney in the Western District of Arkansas is $150/hour. Norwood also avers that there are numerous experienced attorneys in this area who would have been qualified and willing to undertake this matter on behalf of Bowman, including himself.

The Court is not persuaded that Kellum's 2006 rate is the appropriate one upon which to base a fee award in this case. The fee is claimed for work done from December 10, 2001 (when, presumably, Kellum's rate would have been considerably less than his 2004 rate of $225/hour, since his experience would also have been less) until April 16, 2004, when this case was tried. Bowman suggests no reason that Kellum's 2002, 2003, or 2004 work should be paid at his 2006 rate.

Nor is the Court persuaded that only Kellum - or perhaps

---

[4] Just northeast of Dallas.

Shackelford, for a significant premium - could have successfully handled Bowman's case. Defendants have offered evidence that similar legal services in this community can be obtained for $150 an hour and the Court, drawing on its own experience and knowledge of prevailing market rates, **Warnock v. Archer, 397 F.3d 1024 (8th Cir. 2005)**, is aware that such is the case.[5] The Court does not, however, agree with defendants that $150/hour is the upper limit of what is reasonable[6] since, in fact, it is both reasonable and appropriate to take into consideration the experience of the attorney in question.

When the Court considers Kellum's level of experience and extrapolates what his rate probably was in 2002 and 2003 (when the bulk of the work on this case was done), the Court concludes that $200/hour is in line with local rates and will constitute a reasonable and appropriate fee for a case of this nature. The fee award will, therefore, be based on 162.96 hours of attorney time, multiplied by $200/hour, for a fee of $32,592.00.

11. Bowman initially sought $1,385.31 in "non-taxable expenses." He later withdrew his claim to reimbursement for computer research expenses. When those expenses are deducted, the expenses (for telephone, photocopies, postage, and service of process) total

---

[5] Indeed, the Court expects that attorney Ellington must have known of some such attorneys in this area, given his averments as to the prevailing rate for civil rights litigation here.

[6] In the case cited by attorney Norwood, the Court notes that Norwood sought a fee of $200/hour, and would perhaps have been awarded such if he had supported his application with evidence that it was an appropriate rate.

$528.21. This amount will be awarded.

**IT IS THEREFORE ORDERED** that plaintiff Gary Bowman is hereby awarded attorney's fees and expenses in the total sum of Thirty-Three Thousand One Hundred Twenty and 21/100 Dollars ($33,120.21).

**IT IS SO ORDERED.**

                                         **/s/ Jimm Larry Hendren**
                                         **JIMM LARRY HENDREN**
                                         **UNITED STATES DISTRICT JUDGE**